FILED BY _____ D.C.

JUL 21 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

# IN THE UNTED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

**JOSEPH L. WORRELL,**
*PLAINTIFF / APPELLANT,*

ADVERSARY PROCEEDINGS
CASE # 2016 -16-01046-EPK
CHAPTER 13 CASE # 09-15332-EPK

**VS.**

**U.S. District Court Case Number:**
**16-CV-80837-KAM**
16-CV-80694-KAM

**EMIGRANT MORTGAGE COMPANY, INC.,**
**RETAIN REALTY INC.,**
*DEFENDANTS / APPELLEE.*

*ON APPEAL FROM THE U.S. BANKRUPTCY COURT OF SOUTHERN*
*FLORIDA (WEST PALM BEACH)*

## INITIAL BRIEF OF APPELLANT

*Submitted by:*

**JOSEPH L. WORRELL, Appellant - Pro Se.**

P. O. Box 30071, West Palm Beach, FL 33420

i

# TABLE OF CONTENTS

PAGE(S)

Title page…………………………………………………………...…… i

Table of contents……………………………...……………………...…… ii

Table of citation…..……………………………………………..…..... iv

I.     INTRODUCTION
       Main Issues of the case……………………….…..…..…...1 – 2
II.    BACKGROUND
       Statement of facts………...……………………...…. 3 – 8
III.   PARTIES, JURISDICTION AND VENUE ………………….... 8
IV.    STANDARD OF REVIEW……………………………....…….. 8
V.     EFFECT OF SCRA ON BANKRUPTCY PROCEEDINGS ……. 9
VI.    STATEMENTS OF LAW……………………………………… 9
       Effect of violation of Stay …………………...………...…… 9 - 11

VII.   DISCUSSION ……………………………………… 11 - 14
VIII.  MATERIAL ADMISSIONS BY EMIGRANT………...…… 14 - 16
IX.    STANDING……………………………………….…....…… 16 - 18
X.     DOES EMIGRANT HOLD A VALID LIEN;
       Standing to Foreclose
       Analysis of a Mortgage Lien Established Prior To
       Existence of a Promissory Note……………………..…… 18 – 20
       Rooker-Feldman Doctrine and Issue Preclusion ………..…… 20 - 23
XI.    SUMMARY OF THE ARGUMENT…………………...…… 23 - 24
XII.   ARGUMENT
       A Lien Which Pre-Exist an Underlying Promissory Note
       May Be Invalid and Unenforceable As a Matter of Law …..…. 24 - 25
       i.   THE SCRA OPERATES TO PROTECT THE RIGHTS AND
            PROPERTY OF SERVICE-MEMBERS, THEREFORE THE
            FORECLOSURE SALE AND OTHER ADVERSE ACTIONS ARE
            VOID, AND WITHOUT LEGAL EFFECT…..……..…….. 26 - 32

       ii.  FEDERAL LAW, INCLUDING 11 U.S.C. . §362 OPERATES TO
            PROTECT PROPERTY OF THE BANKRUPTCY ESTATE, AND
            RENDERS ALL SELF-HELP POST-PETITION SALES, VOID AB
            INITIO …………………………….…..……...…………….. 32 – 41

iii. THE "DISMISSAL STATUTE" OPERATES UPON DISMISSAL OF A CHAPTER 13 CASE, TO REVEST PROPERTY OF THE ESTATE …………………………………………..……… 41 – 45

11 U.S.C. §349; Effect of Dismissal …………..……………… 42

Statutory Analysis of §349 …………..…………………… 42 - 43

Property of The Estate ……………………………………… 43

Revesting of Property of The Estate ……………………… 43 - 45

XIII.   CONCLUSION……………………………………….……………...… 45

Service List…………………………………………………...… 46

# I.
## INTRODUCTION
*MAIN ISSUES OF THE CASE*

This case involves the violation of federal injunctive stays, as a result of the sale of the home of a military veteran who was deployed overseas, with a Chapter 13 case pending on August 31, 2009 at the time of the sale. The Appeal is taken from orders of the bankruptcy court of Southern Florida, meant to give legitimacy and finality to the actions of Appellee Emigrant Mortgage Company (EMIGRANT), regarding its ***self-help*** "foreclosure" sales conducted after Appellant Joseph L. Worrell (WORRELL) filed bankruptcy in 2009, then was deployed for a year. Undeterred by WORRELL's military **active duty** service or the Service member Civil Relief Act **(SCRA)**, EMIGRANT relied on a vacated [mistaken] dismissal, and conducted not one - but two - unapproved sales. The case was reinstated and stayed pursuant to the SCRA pending WORRELL's release from active duty, and EMIGRANT participated in the Chapter 13 proceedings, albeit by filing unsupported proofs of claim, twice. However, EMIGRANT refused to set- aside or cancel its self-help sales, and willfully failed to abide by 2009 orders of the bankruptcy court intended to enforce WORRELL's protected SCRA rights. Eventually, in 2013, nearly four years later, in a sort of "three-card monte" scheme it had the state court breathe "new live" into one of the 2009 invalid sales, seized the home, then obtained a $749,518.64 "deficiency"

# I.
## INTRODUCTION
*MAIN ISSUES OF THE CASE*

This case involves the violation of federal injunctive stays, as a result of the sale of the home of a military veteran who was deployed overseas, with a Chapter 13 case pending on August 31, 2009 at the time of the sale. The Appeal is taken from orders of the bankruptcy court of Southern Florida, meant to give legitimacy and finality to the actions of Appellee Emigrant Mortgage Company (EMIGRANT), regarding its ***self-help*** "foreclosure" sales conducted after Appellant Joseph L. Worrell (WORRELL) filed bankruptcy in 2009, then was deployed for a year. Undeterred by WORRELL's military **active duty** service or the Service member Civil Relief Act **(SCRA)**, EMIGRANT relied on a vacated [mistaken] dismissal, and conducted not one - but two - unapproved sales.  The case was reinstated and stayed pursuant to the SCRA pending WORRELL's release from active duty, and EMIGRANT participated in the Chapter 13 proceedings, albeit by filing unsupported proofs of claim, twice. However, EMIGRANT refused to set- aside or cancel its self-help sales, and willfully failed to abide by 2009 orders of the bankruptcy court intended to enforce WORRELL's protected SCRA rights. Eventually, in 2013, nearly four years later, in a sort of "three-card monte" scheme it had the state court breathe "new live" into one of the 2009 invalid sales, seized the home, then obtained a $749,518.64 "deficiency"

judgment against the veteran, which it is aggressively seeking to enforce more than four years outside the state statute of limitations.

The controversy therefore raises several crucial questions concerning -

(a) Whether the SCRA protection Congress affords Service members is mandatory, based on their *military status* and "active duty" service, or entirely at the court's discretion. Second,

(b) To what extent is the bankruptcy stay provided under Section 362 affective or "re-imposed" by an order *vacating* an earlier *mistaken* dismissal. And third,

(c) When a case is ultimately dismissed and closed, does the bankruptcy code *by its operation*, revest the Chapter 13 property in the debtor, pursuant to the "Dismissal Statute"; *Id* 11 U.S.C. Section 349(b)(3)

This uncommon case, further poses at least two additional questions - first about the basic issue of "legal standing" to enforce a "security lien" which undisputedly *pre-existed* the note it purports to secure. And lastly, the use of Rocker-Feldman, or other Collateral Estoppel preclusion doctrines as successful defenses to prevent a bankruptcy court from carrying out its Article one, Section eight Constitutional functions, and statutory duties.

## II.
## BACKGROUND
*STATEMENT OF FACTS*

This case stems from a foreclosure[1] lawsuit filed by EMIGRANT on Monday, October 29, 2007 ***alleging*** that WORRELL a Navy veteran, and his former wife, had failed to make payment the previous month, in September 2007, and therefore had defaulted on a mortgage **established** on Thursday, June 23, 2005. The last claim in the three count complaint alleged that EMIGRANT had lost possession of the promissory note ***executed*** *on Wednesday, June 29, 2005*; six days *after* the mortgage was established [*Id* page 4 of alleged note].

EMIGRANT also *alleged* that as the "owner and holder" of a "lost note" executed in its favor, Florida law (F.S. §673.3091) permits it to re-establish the note; but failed to do so. Exhibit-A to the "foreclosure" complaint is a *photocopy* of a note that allegedly was executed on *June 29, 2005* (with inconsistent signatures); and Exhibit-B is a *photocopy* of a publicly recorded mortgage executed and witnessed on June 23, 2005. [*Id at* Book 18922, Page 0662, Palm Beach County Official Records].

On July 24, 2008 WORRELL entered a short period of *active duty* and served copies of his military orders. The next day, on July 25, 2008 despite knowledge of WORRELL's military status, and to avoid his answer and affirmative defenses, EMIGRANT moved for a summary judgment.

---

[1] BLACK'S LAW DICTIONARY (defining foreclosure as "[a] legal proceeding to terminate a **mortgagor's interest in property**, instituted by **the lender** (the mortgagee) either to gain title or to force a sale in order to satisfy the unpaid **debt secured by the property**").

On about July 31, 2008 Congress enacted the Housing and Economic Reform Act (HERA 2008), expanding its SCRA protections to include a prohibition against foreclosure of military Service members, within nine months *after* their service. In August 2008 WORRELL returned to Florida upon his release from active duty.

On Monday, October 20, 2008 without ruling on the outstanding discovery or accounting needed to defend the lawsuit, Florida fifteenth Circuit Judge Honorable Jeffrey Colbath Jr. granted EMIGRANT a summary final judgment for $639,955.05, and scheduled sale of the home for Monday, December 1, 2008, in violation of WORRELL's due process and protected rights under the SCRA 2003 and HERA 2008.

After fruitless state appeal attempts, WORRELL filed for Chapter 13 bankruptcy on Thursday, March 26, 2009 (case 09-15332). But undeterred, on Monday, March 30, 2009 EMIGRANT conducted the first of its two self-help foreclosure sales of the home, without seeking any lifting of the 362 bankruptcy stay, and in *continued* violation of the military veteran's rights; Under federal law, a bankruptcy petition <u>also</u> operates as a stay of, among other things, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . ." 11 U.S.C. § 362(a)(1).

In April 2009 WORRELL filed copies of military orders showing his *involuntary deployment* overseas for 1 year, and requested that EMIGRANT set aside its unapproved sale, but it refused to do so. In May 2009 as directed by the U.S. Navy WORRELL deployed, and once again served notice to interested parties, including EMIGRANT <u>and the Chapter 13 trustee</u>, requesting enforcement of his SCRA rights. However, shortly after his entering active duty service again, EMIGRANT orchestrated a second unapproved sale of the home on Monday, August 31, 2009; predicated upon a *[wrongful]* dismissal of the bankruptcy case on Wednesday, July 1, 2009, while he was deployed overseas[2].

On Tuesday, September 1, 2009, the day following EMIGRANT's second self-help sale, the bankruptcy court **VACATED**[3] its *[mistaken]* dismissal order, *REINSTATED* the case, and *STAYED* proceedings in accordance with the SCRA, due to the debtor's *military deployment* overseas.

Over the next 14 months or so, until WORRELL eventually **redeployed** again in October 2010, EMIGRANT (apparently aided by the trustee) purported to file at best "inconsistent", if not outright *fraudulent* claims, purposefully avoiding

---

[2] Emigrant also improperly obtained a second default "Summary Judgment" in vviolation of the SCRA on July 29, 2009 to replace its October 20, 2008 SJ, after it had secured the first dismissal from the trustee with a 6 month ban period to seize the veteran's home during the yearlong deployment.

[3] *Vacatur* is for a judge to <u>set aside</u> or <u>annul</u> an order or judgment which he/she finds was improper.

providing mandatory copies of its [defective] mortgage and note (See Bankr. P. Rule 3001). In October 2010 WORRELL was redeployed and on Friday, November 19, 2010 another *[wrongful]* dismissal of his case occurred, again in violation the SCRA. Thereafter, EMIGRANT proceeded in state court by ignoring the bankruptcy order entered Tuesday, September 1, 2009 which had expressly VACATED the [wrongful] dismissal of July 1, 2009; on which its disputed August 31, 2009 self-help sale is based. Arguing that granting title to the veteran's property is a merely "ministerial" matter, on January 24, 2013, nearly four years after the fact, EMIGRANT elected to proceed on a sale that the bankruptcy court *effectively* had already cancelled, since Tuesday, September 1, 2009.

Following another set of [fruitless] state court appeals, on Friday, December 18, 2015 the bankruptcy court reopened the Chapter 13 case for adversary proceedings against EMIGRANT for its refusal to cancel the August 31, 2009 self-help sale, in willful failure to abide by the September 1, 2009 court order. In granting WORRELL's motion to reopen, the bankruptcy court based its decision on established **Eleventh Circuit authority** holding that the order vacating the first wrongful dismissal, effectively *invalidated* EMIGRANT's second unapproved sale, and retroactively re-imposed the 362 stay.  The bankruptcy court however, did not discuss the applicability of the SCRA stay in its decision to reopen the case. Federal statute 50 U.S.C. 533(c) declares any *unapproved* sale or seizure of a Service members' property SHALL be VOID.

On Wednesday, April 13, 2016, in granting EMIGRANT's motion for summary dismissal of the adversary compliant prior to discover or trial, the court then hinges essentially its entire decision on a solitary fairly dissimilar case - *In re Hill*, 305 B.R. 100, 107-108 (Bankr M.D. Fla. 2003). The reasoning used in the September 13 order [erroneously] concludes that there could be no 362 stay violation because the order vacating the first [mistaken] dismissal was entered on September 1, 2009, the day ***after*** the foreclosure sale took place; *Id* ECF #47, page 3, paragraph 3.

The decision also [incorrectly] reasoned there also could be no violation of the SCRA statute, because the court(s) had failed to put into *effect*, or grant the SCRA stay on August 31, 2009, the date of EMIGRANT'S self-help sale of the veteran's home; *Id* ECF #47, page 2, paragraph 3.  Again, the court did not say how that ruling comports the with11 U.S.C. Sections 362(c) or 349(b)(3), and the undisputed fact that home's title and ownership obviously remained with the military debtor until February 1, 2013.

Lastly, the bankruptcy court imposed a $15,000.00 sanction for the veteran having named an investor alleging to be a *bona fide* "purchaser" who purchased the home while the *unsettled dispute* was **ongoing** and still on *appeal*.

This Appeal ensued.

## III.

## PARTIES, JURISDICTION AND VENUE

The appeal is under 28 U.S.C. § 1334(a), which provides for appeals from final orders. This District Court further has original subject matter jurisdiction pursuant to 28 U.S.C. §1331, § 1332(a), § 1391(b), and § 2106, since claims herein are for violation of rights arising under federal statutes.

## IV.
## STANDARD OF REVIEW

The grant of a motion in summary proceedings dismissing a claim is proper only where, assuming all reasonable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. An order granting summary dismissal of a complaint prior to trial, is subject to *de novo* review. When there are disputed material facts precluding the grant of summary prosceedings, dismissal is tantamount to denial of the right to a trial, and denial of due process. Since a bankruptcy court's conclusions of law are reviewed *de novo,* accordingly, the order on appeal may be reviewed based on applicable bankruptcy and nonbankruptcy law, and rules pertaining to summary dismissal of a complaint.

The decision to reopen a bankruptcy case lies within the court's sound discretion, provided that reopening is not futile.

## V.
## EFFECTS OF SCRA ON BANKRUPTCY PROCEEDINGS

The official information published on the U.S. Courts and bankruptcy courts' website states the Servicemembers' Civil Relief Act applies in bankruptcy

-8-

cases. It provides protection to members of the military against the entry of default judgments and gives the court the ability to stay proceedings against military debtors.

## VI.
## STATEMENT OF LAW
### *EFFECT OF VIOLATION OF STAY*

Under the order of the bankruptcy court on September 1, 2009, the [real] property thereafter remained in the military debtor's Chapter 13 estate pursuant to 50 U.S.C. §533(c); 11 U.S.C. §362(c); and expressed orders of the bankruptcy court, and EMIGRANT was bound by the terms therein; a claim *sufficiently stated* in the adversary complaint and related pleadings (Appendix-1).

The court order on July 1, 2009 dismissing the case after the military debtor had deployed, was rightly VACATED, and the federal *stays* were in effect- under both the SCRA and from the Service member filing the bankruptcy petition; as invoked under 11 U.S.C. § 362(a). By not properly ceasing its state court foreclosure proceedings and by attempting to *complete* self-help "foreclosure remedies" it begun while the military debtor was deployed overseas, without seeking the bankruptcy court's *expressly approval* to modify or lift the federal injunctive stays using its exclusive authority Congress provided under **§362(d)**, EMIGRANT violated the debtor's SCRA rights and the section 362 stay. These actions evidence a *willful* failure to abide by the orders of the bankruptcy court, intended to enforce the SCRA; especially *after* vacatur of the order on which the

*"attempted sale"* on Monday August 31, 2009 was based. These violations would subject EMIGRANT to the following effects, and penalties:

A. *ACTIONS VOID.* As a general rule, actions taken in violation of the automatic stay are void, and without legal effect. Therefore, based on the law and facts in this case each of EMIGRANT's 2009 unapproved sales on March 30 and on August 31, are void ab initio. Kalb v. Feuerstein, <u>308 U.S. 433</u>, 60 S.Ct. 343, 84 L.Ed. 370 (1940); Caribbean Food Products, Inc. v. Banco Credito y Ahorro Ponceno, <u>575 F.2d 961</u> (1st Cir. 1978) (turnover of accounts collected in violation of stay); Zestee Foods, Inc. v. Phillips Foods Corp., <u>536 F.2d 334</u> (10th Cir. 1976); Meyer v. Rowen, <u>181 F.2d 715</u> (10th Cir. 1950); Potts v. Potts, 142 F.2d 883 (6th Cir. 1944), cert. denied, 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423 (1945).

B. *CONTEMPT.* The violative conduct would also be in contempt of court, and subject to a fine. See Fidelity Mortgage Investors v. Camelia Builders, Inc., <u>550 F.2d 47</u> (2nd Cir. 1976) cert. denied, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977).

C. *AWARD OF ATTORNEY'S FEES.* A Party who violates the bankruptcy and the SCRA federal stays could be forced to compensate for attorneys' fees. In re Tillery, 2 Bankr.Ct.Dec. 798 (S.D.Ala.1976); In re Gann, 1 Bankr.Ct.Dec. 154 (E.D.Tenn.1974). Compare Household Fin. Corp. v. Smith, 6 C.B.C.

653 (E.D.Va.1975). See discussion of effects of Violation of Stay in 2

Collier on Bankruptcy, 15th Ed. P 362.11, page 362-58, et seq.

D. *WILLFUL VIOLATION OF SCRA RIGHTS.* The SCRA also provides that a

sale or seizure of property from anyone protected by the Act, without

expressed court approval is void, and actionable; *Id.* 50 U.S.C. 533(c) and

4042(a); formerly *Id* 597(a).

## VII.
## DISCUSSION

This case involves a debtor serving in the military after being called-up and

*involuntarily* deployed with the U.S. Navy in 2009, while attempting to defend a

lawsuit filed by EMIGRANT, a New York financial company[4].  Due to the

protracted timeline since the controversy began, nearly all the details needed are

well documented, and may be gleamed readily from the official record.  Despite its

long and convoluted course, the dispute may be roughly boiled down into four key

issues -

> (1) Legal standing to foreclose *[in summary proceedings]* on a
>
> mortgage the *[alleged]* creditor by its own testimony and
>
> pleadings, asserts was *[improperly]* procured on June 23, 2005, six
>
> days prior to a "lost note" *allegedly* executed on June 29, 2005;
>
> which it failed re-establish after seeking to do so.

---

[4] The Official Certificates for title filed by Emigrant in the land records falsely claims it is a ***Florida Non-Profit Corporation***.

(2) The applicability of the SCRA including the "Obama amendments" thereto, and other federal laws enacted to protect the rights of members of the military; especially on August 31, 2009 - the date EMIGRANT contends it sold the home, while the military debtor was indisputably, deployed overseas.

(3) The precise operation of at least two sections of title 11 of the bankruptcy code:

   a. Section 362, as it is affected by the September 1, 2009 order vacating a [mistaken] dismissal entered two months earlier, and re-imposing a federal stay injunction; to wit, whether EMIGRANT's "sale" dated August 31, 2009 is valid, or void.

   b. Section 349(b)(3); the so call "dismissal statute" which *operates* to revest estate property in the debtor when a Chapter 13 case is dismissed, except the bankruptcy court "for cause" orders otherwise.

The dispositive issue here is whether the home became property of the Chapter 13 estate and, as such, did it revest in the debtor when the case was dismissed on Friday, November 19, 2010.  Additionally, Appellant holds that the 362 stay actually **never lifted** because the military debtor was deployed overseas, and unable to receive constitutional "*notice and hearing*" regarding the [mistaken]

-12-

dismissal orchestrated after he was sent overseas pursuant to his 2009 military orders. See authority holding that legal notice necessary, sufficient to meet U.S. Const. In Re: Gregory, 705 F. 2d 1118, 1122-23 (9th Cir. 1983); In Re: Blumer, 66 BK at 113 In Re: Whitney Forbes 770 F. 2d 692 (7th Cir 1985); In Re: Mullane v. Central Hanover Bank 339 US 306, 314, 70 S. Ct. 652, 657, 94L. Ed. 865(1950).

Appellant further asserts that violation of the federal injunctive stays renders transfer of his property to Appellee Retained Realty Inc. a nullity, pursuant to 11 U.S.C. § 362 and 50 U.S.C.§ 533(c). This argument is well grounded as the courts have consistently stated as a general rule, that actions resulting in violations of the Section 362 stay, are void.

In the United States, someone performing military service is not required to notify *all* their creditors that they are on active duty. Rather, pursuant to federal law, a party seeking to foreclose on property is charged with determining the defendants' *military status. Id at* SCRA §521(b). This ruling, were it allowed to stand, would unfairly shift that burden onto Service members, then deny them any relief even when the burden is met, as in this instance.

The military stay operates similar to the bankruptcy automatic stay which provides protection for *debtors* in bankruptcy against creditors. Similarly, The Servicemembers Civil Relief Act provides relief to *Service members under current military duty* (title 10 orders). Just as a legitimate creditor in bankruptcy must, if it wishes to pursue a debtor, obtain relief from stay under 11 U.S.C.§362(d), likewise

-13-

court ordered relief from the SCRA "active duty" stay must be obtained, *before* a creditor may *legally* proceed against someone serving on military active duty, and the court *must* follow the statute and make clear factual findings, as to cause.

**VIII.**
**MATERIAL ADMISSIONS BY EMIGRANT**

Tellingly, EMIGRANT boldly admits its underlying lawsuit is based on a *mortgage* dated June 23, 2005, which it [deceptively] procured as security for a *promissory note* allegedly executed *six days later,* on June 29, 2005. Exhibits of the [defective] instruments are attached to the [bad faith] "foreclosure" complaint filed in three counts, including one count seeking to "re-establish a lost-note". Therefore, based on its own assertions, Appellee admits that it, by law, is NOT the holder of a *[legitimate] mortgage,* or *perfected interest* in the veteran's property.

Next, regarding the exact timing of its "foreclosure sale" in question, on Monday, August 31, 2009. EMIGRANT does not dispute that it received adequate notice and had knowledge of the veteran's military status, and protections normally afforded U.S. military Service members serving on active duty.

EMIGRANT does however, falsely dispute whether the SCRA protects members of the Reserves called to "Active Duty" under title 10 military orders, yet it offers no valid basis to support that argument either.  Similarly, it fails to explain why the bankruptcy "dismissal statute" 11 U.S.C. § 349(b)(3), and federal

-14-

protections pursuant to 50 U.S.C. §533(c) are not sufficient to render both "foreclosure sales", invalid.

On Tuesday, September 1, 2009, the day after the sale in question, EMIGRANT acknowledged the bankruptcy court's order intended to enforce the SCRA by VACATING the [mistaken] dismissal entered two months earlier, *reinstating* and *staying* the case pending the veteran's safe return from deployment overseas. Thereafter, EMIGRANT even participated in the Chapter 13 case by purporting to file [purposefully] *unsupported* "proof of claims" intended to evade important requirements of Bankruptcy Rule 3001. Also telling is that EMIGRANT clearly avoided seeking approval from the [bankruptcy] court for any of its sales. Neither did it seek equitable relief or lifting of the automatic stay, because this too requires filing copies of its [defective] mortgage and [forged] note, for scrutiny in federal court.

After WORRELL's redeployed again in October 2010, another dismissal was orchestrated. After the second dismissal EMIGRANT abruptly changed its tune - proceeding [in the state court] to "validate" an already void sale from August 31, 2009, in willful violation of the September 1, 2009 bankruptcy order, and the SCRA federal statute. Although the clerks in the state court [from 2011 until 2013] required that the "bankruptcy sale" *must* be reset for valid title to issue, yet EMIGRANT **refused to do so**.

-15-

Due to sheer persistence, ultimately on January 24, 3013 the clerk was ordered to issue title, contrary to and inconsistent with, the bankruptcy order filed on September 1, 2009.  Consequently, the sale date cited on the [forged] title issued to EMIGRANT on February 1, 2013 is "**August 31, 2009, 2013**"; obviously a false, invalid, and bogus date.

By its actions Emigrant shows it is aware of the serious defects in its claims.

## IX.
### STANDING

The first question before any court with competent jurisdiction to hear this matter, is whether in the United States a _uniform_ _residential_ _mortgage_ the _alleged_ holder admits existed a week **before** its inconsistent underlying promissory note, is legally enforceable _[in summary proceedings]_ under federal and state law. If it answers in the affirmative, the default judgment is void as lacking constitutional due process. If it is based on forgery, the alleged mortgage lien is invalid and unenforceable, and EMIGRANT's claims are asserted in bad faith, contrary to the clean-hands doctrine.

Next, as to the disputed claims giving rise to this appeal, including the invalidity of the second self-help foreclosure sale on Monday, August 1, 2009, in violation of WORRELL's SCRA rights, no legal basis or standing can be demonstrated, as required.

The U.S. Supreme Court has made it clear that the burden of establishing standing rests on the plaintiff. At each stage of the litigation - from the initial pleading stage, through summary judgment, and trial - the plaintiff must carry that burden. Standing must exist on the date the complaint is filed and throughout the litigation. Moreover, standing cannot be conferred by agreement and can be challenged at any time in the litigation, including on appeal, by the defendants or, in some circumstances, by the court sua sponte.  Furthermore, plaintiffs must demonstrate standing for each claim and each request for relief.  There is no "supplemental" standing: standing to assert one claim does not create standing to assert claims arising from the same nucleus of operative facts.

In this instance, that burden simply could not be met because of the elements of bad faith and forgery shown by EMIGRANT bringing this action in summary proceedings, against someone performing military service.  So, not only does EMIGRANT simply fail to demonstrate sufficient legal standing, but any reasonable person must conclude it indeed clearly lacked such standing at several crucial points in this case - particularly on August 31, 2009, after the wrongful dismissal order underpinning its sale, had been vacated.

In ordinary and legal usage, the dismissal order when it was vacated became forever cancelled and void; vacate means: (Void), *verb* abandon, abdicate, abolish, annul, cancel, countermand, deprive of force, disannul, do away with, eliminate,

evacuate, invalidate, make void, negate, nullify, overrule, quash, recant, relinquish, render inoperative, repeal, rescind, retract, reverse, revoke, set aside, etc.

Accordingly, the disputed sale of August 31, 2009 is void, rendered nonoperative, reversed, set aside, etc. A void action cannot be cured, or validated *at a later time*. Nevertheless, instead of resetting the sale, which typically takes about 45 days, due to its defective forged lien, EMIGRANT elected to invest over 4 years seeking title based on a void sale, although it knows a void action legally cannot be cured, or validated at a later time.  The one thing that *is certain* in this case is that, the home remained under the veteran's *ownership* for nearly 5 years **after** it was *purportedly* "**purchased**" on Monday, August 31, 2009 during his *military deployment*.

## X.
## DOES EMIGRANT HAVE A VALID LIEN; STANDING TO FORECLORE
*ANALYSIS OF A MORTGAGE CREATED PRIOR TO THE EXISTANCE OF A PROMISSORY NOTE*

It is undisputed that the basis for this case comes from claims asserted by EMIGRANT, predicated on a lien dated June 23, 2005, purported to secure a promissory note *allegedly* executed a week later, on June 29, 2005.  This at best describes a **defective** unperfected lien; a **serious problem**, which rightly must be addressed by anyone with jurisdiction over this dispute including this Court, in reviewing whether the bankruptcy court erred. All the authorities agree, that a note

representing a debt is the *principal thing*, and the mortgage an accessory. The U.S.

Supreme Court has long ago addressed this very issue, stating that:

> "The mortgage can have no separate existence. When the note is paid the
> mortgage expires. It cannot survive for a moment the debt which the note
> represents. This dependent and incidental relation is the controlling
> consideration..."
>
> See *Carpenter v. Longan*, 83 U.S. 271, 16 Wall. 271, 21 L.Ed. 313 (1872).

Our highest Court has also said in *Longan*: "assignment of a *mortgage*

without the note, is a nullity". Courts in the United State unanimously agree that a

residential *mortgage* is a security instrument governed by the *Uniform Commercial*

*Code* (UCC), and serves as security for an underlying debt obligation, evidenced

by the promissory note tied to the mortgage. Therefore, the note upon which the

mortgage is based is a predicate, and necessary for a valid mortgage to exist.

In bankruptcy several courts have also examine this issue, holding that to be

legally enforceable a mortgage must "specifically and accurately" identify the

obligation secured. A mortgage which purports to secure the payment of a debt has

no validity, if the debt has no existence; *Bradham v. Robinson*, 236 N.C. 589, 594,

73 S.E.2d 555,558 (1952); *Walston v. Twiford*, 248 N.C. 691,693,105 S.E.2d 62,

64 (1958).  Some courts have held that because a mortgage [deed of trust] did not

"specifically identify" the debt, it is necessarily unenforceable in bankruptcy. A

deed of trust must therefore "identify the obligation secured" to be valid; *Walston*,

248 N.C. at 693, 105 S.E.2d at 64; See also *In re Hall*, 708 S .E .2d 17 4, 1 77 (20

11) (stating that a deed of trust must "specifically identify the obligation it

secures"). Indeed, some courts have decided that a discrepancy of merely 1 day in the execution date may be fatal to the validity of a lien, especially where there are significant inconsistencies with the underlying debt instrument. See *in re Head Grading Co. Inc.*, 353 B.R. 122 (Bankr. E.D.N.C. 2006). In *re Head* is one of several bankruptcy cases in which the bankruptcy court held that, because the deed of trust did not "specifically identify" the debt, it was unenforceable. Furthermore, a note's date of execution is a material term, and where the date referenced in the Mortgage differs from the date of the Note, the lien may be ultimately invalid, and unenforceable in bankruptcy proceedings.  In any event, the court must closely scrutinize the mortgage and note produced as evidence of a claim in order to decide whether there is sufficient consistency to adequately describe the obligation of the grantor(s), and adequately protects against the possibility of fraudulent substitution of fictitious debts.

### ROOKER-FELDMAN DOCTRINE AND ISSUE PRECLUSION

EMIGRANT argues erroneously that the state court judgment is not subject to collateral attack, that WORRELL is prevented from raising an issue with the judgment due to Res Judicata, Rooker-Feldman, and other preclusion doctrines, because "*the issue*" was "*fully litigated*" in the state courts and cannot be "relitigated". These arguments are without merit if a court has the exclusive jurisdiction to determine stay violations.

The bankruptcy court has the equitable power to set aside a foreclosure sale. In Re Krueger, 69 B.R. 845 (Bankr.C.D.Cal.1987). In In Re Krueger the court set aside the foreclosure sale based on the unique facts of the case where the creditor's action (or failure to act) resulted in the sale of the debtor's real property.  In this case there are unique facts which warrants the court using its equitable powers pursuant to 11 U.S.C § 362 to set aside the foreclosure sale. At the time of the foreclosure sale, the veteran's bankruptcy case had been reinstated and the he was deployed overseas on military Active Duty.  These facts warrant setting the foreclosure sale aside and cancelling the defective deeds.

Ordinarily, the Rooker-Feldman doctrine bars lower federal courts from reviewing state court decisions. See In re Dabrowski, 257 B.R. 394, 405 (Bankr. S.D.N.Y. 2001). However, there is an exception to this doctrine. A bankruptcy court can "override" a state court judgment if the state court judgment is void ab initio. Id. at 406. That is, state court judgments are subject to collateral attack in a federal court if the state court acted beyond its power. Id. In the Second Circuit, any proceedings or actions described in § 362(a)(1) are void and without legal effect if they occur after the automatic stay takes effect. See Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir. 1998).

Section 1334(a) of title 28 of the United States Code in conjunction with the Standing Order of Reference on January 31, 2012 gives bankruptcy courts

-21-

"original and exclusive jurisdiction of all cases under title 11." Bankruptcy courts also "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11." 28 U.S.C. § 1334(b). "[N]othing in that section vests the states with any jurisdiction over a core bankruptcy proceeding, including 'motions to terminate, annul, or modify the automatic stay'" *Gruntz v. Cnty. of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1083 (9th Cir. 2000).

If the non-bankruptcy court's initial jurisdictional determination is erroneous, the parties run the risk that the entire action later will be declared void ab initio. See Schwartz v. United States, 954 F.2d 569, 570-71 (9th Cir.1992). If a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy forum, the bankruptcy forum's resolution has been held determinative, presumably pursuant to the Supremacy Clause. See Raymark Indus. v. Lai, 973 F.2d 1125, 1132 (3d Cir.1992) (bankruptcy court and state court both held action in state court not barred by the stay, but the Third Circuit reversed the bankruptcy court and remanded with instructions to enter an order vacating the judgment of the state court under an exception to the Rooker-Feldman doctrine).

It is undisputed that only a bankruptcy court has jurisdiction to 'terminate, annul or modify' the automatic stay. Since the bankruptcy court has exclusive jurisdiction to annul the automatic stay, any state court rulings inconsistent with

the stay being in effect, and in accordance with the order vacating the dismissal during Appellant's military deployment in 2009, would be void and properly subject to collateral attack, without preclusionary effect.  Appellee EMIGRANT misstates the application of the Rooker-Feldman Doctrine, Full Faith and Credit Act, Res Judicata and Collateral Estoppel as its basis for dismissal.

## XI.
## SUMMARY OF THE ARGUMENT

The findings of the bankruptcy court in this case, render key sections of the Bankruptcy Code moot, including important provisions in Sections 362 and 349. The decision is arbitrary, unsupported by applicable law, runs squarely at odds with established practice, and clearly contradict the circumstances and facts of this dispute.

The immediate issue before the Court to be determined is whether the Plaintiff set forth a cause of action against EMIGRANT for violation of the bankruptcy stay under 11 U.S.C. §362 and violation of 50 U.S.C. §522 (b) and (d) of the Servicemember's Civil Relief Act (SCRA), which protects service members *while serving on "Active Duty"*.

It ought not be disputable that the bankruptcy court possesses the necessary authority and jurisdiction - under U.S. Constitution, Article I Section 8, federal law at 28 U.S.C. §1334(a) and the bankruptcy code at Section 105 of title 11- which empowers it to make orders necessary to enforce bankruptcy law. This grant does

not however, authorize it to re-write federal statutes. Therefore, for reasons including those listed below, the decision appealed is unsupported in the law, erroneous, and provide perverse incentives for violation of important federal laws tied directly to the national defense of the United States:

    i.    The SCRA and related laws, *operates* to protect the right and property of Service members based on their "active duty" military status, which renders the self-help foreclosure sales VOID, ab initio.

    ii.    The foreclosure sales in this case, orchestrated on March 30 and August 31, 2009, are each void for violating the Section 362 bankruptcy stay.

    iii.    To the extent that any part of the unapproved sales are not invalid, the bankruptcy code *operates upon dismissal* of a chapter 13 case, to immediately revest property of the estate in the debtor.

# XII
## ARGUMENT
*A LIEN WHICH PRE-EXIST AN UNDERLYING PROMISSORY NOTE MAY BE INVALID AND UNENFORCEABLE, AS A MATTER OF LAW*

First, the record evidence readily shows a pattern of bad faith and deception put in play long ago by Appellee EMIGRANT. One basic question now before the Court is whether a lien EMIGRANT itself claims was originated on June 23, 2005

as security for a promissory note allegedly executed a week later on June 29, 2005, is legally enforceable under pertinent state and federal law.

The Court need not address the other merit based infirmities in this case, if it first squarely addresses this undisputed defect, or if it answers this key question in the negative, as EMIGRANT's summary judgment proceedings would necessarily represent a failure of constitutional due process.

If however it answers in the affirmative, it then must decide whether bankruptcy law and the SCRA, allows for the seizure of property without evidence of legal standing, by an alleged creditor seeking to foreclose on a deployed military veteran fighting overseas, with an active bankruptcy case pending.

In this case it is also undisputed that Retained Realty is not a good faith bona fide purchaser for value, as is clearly stated on the Quitclaim Deed to Retained Realty recorded on September 11, 2015 in Official record book 27797 page 0284 in Palm Beach County, Florida stating: "(d)ocumentary Stamp Taxes are not due on this transfer, as the transfer is from a parent transferor to its wholly owned transferee without any exchange of value". It is clear therefore, that Retained Realty received title to WORRELL's property merely because EMIGRANT is its parent company, and that each subsequent movement of title, is part of a larger deception. Therefore, the action against it must not be dismissed.

### i.  THE SCRA OPERATES TO PROTECT THE RIGHTS AND PROPERTY OF SERVICE-MEMBERS, THEREFORE THE FORECLOSURE SALES AND OTHER ADVERSE ACTIONS ARE VOID, AND WITHOUT LEGAL EFFECT

The lower court's decision is arbitrary, inconsistent with established practice, and contradicts the clearly stated text and intent of federal statutes enacted to protections members of the military serving on active duty. The decision below, if permitted to stand, would establish bad precedence for everyone serving in the military, and create perverse incentives for *[false]* creditors and debt collectors to engage in purposeful deceptions to defeat bankruptcy rules and important statutes tied to the national defense.

The case against EMIGRANT involves its violation of federal injunctive *stays* as a result of the sale of WORRELL's home, therefore constituting a defect in the deed eventually issued to Retained Realty on September 11, 2015, and any subsequent "owners". Accordingly, the Court should have denied the Motions to Dismiss the Complaint, allowing the issues to be decided after adequate discovery and a trial based on the facts and circumstances of the case, instead of baseless rhetoric.

It is unequivocally accepted that WORRELL's home and military service were protected from EMIGRANT's adverse actions in accordance with the SCRA. *Id at* 50 U.S.C. § 516; 15 U.S.C. §1692; 32 U.S.C. § 505b; 50 U.S.C. § 533(c) and § 303. Federal law requires, amongst other things, that a party seeking to proceed

with a civil action ***must*** determine, before going forward, the *military status* of Defendants and file, under penalty of perjury, sufficient evidence showing that they are NOT entitled to SCRA protections. EMIGRANT's actions show its wanton willful disregard of the letter and spirit of the SCRA, as well as the expressed orders of the bankruptcy court on September 1, 2009 while WORRELL was fighting overseas, and therefore should not be countenance by the Courts. Furthermore, the courts cannot rule in its favor, without acquiescing to being an accessory in its misconduct.

In 2003 the Congress, with *bipartisan support*, enacted the Service-member Civil Relief Act (SCRA) "to provide for, strengthen, and expedite the national defense through [the] protection… of Servicemembers… [so as] to enable such persons to devote their entire energy to the defense need of the Nation… " 50 USC App. §502(1).  This goal and intended purpose of the SCRA is accomplished by providing for "suspension of judicial and administrative proceedings and transactions that may adversely affect the civil right of Servicemembers during their military service." *Id at* §502(2). The protections of the SCRA extend to, *inter alia*, members of the Army, Navy, Air Force, Marine Corps and Coast Guard while on active duty. The SCRA provides even greater protections to members of the Reserves which represents about half the total U.S. military force, who are called to active duty under title 10; 10 U.S.C. §101(d)(6) and §12302.

In the United States, someone performing active duty service is ***NOT*** required to notify all their creditors that they are on active duty. Rather, pursuant to federal law, a party seeking to foreclose on the property in which it ***claims*** an interest is charged with determining whether a defendants in its action may be protected by the SCRA by virtue of their title 10 service. *Id at* §521(b).

Among the protections afforded Servicemembers, the SCRA limits a lender's ability to foreclose on an active duty Servicemember's property.  For instance, "[a] sale, foreclosure, or seizure of property for a breach of an obligation" secured by a mortgage, deed of trust or other security in the nature of a mortgage *"shall not be valid"* if made during, or within one year after, the period of the Servicemember's military service except "upon a court order granted ***before*** such sale, foreclosure, or seizure with a return made approved by the court." *Id at* §533(c)*(Emphasis added).*

The U.S. Supreme Court has also spoken, holding consistently that the law must be read with an eye friendly to those who dropped their affairs to answer the country's call. (See Re: Le Maistre v. Leffers, 333 U.S. 1, 6 (1948)); and that the law "is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." (Also see Re: Boone v. Lightner, 319 U.S. 561, 575, 63 S. Ct. 1223, 1231 (1943)). The SCRA federal statute provides a private right of action stating that "any person" aggrieved by a

violation of the Act may recover in a civil action "appropriate equitable or declaratory relief," "all other appropriate relief, including monetary damages," and the "costs of the action, including a reasonable attorney fee." *Id* §597(a), as revised at §4042.

Due to the multiple deployments frequently experienced by war fighters nowadays, perhaps never before have the procedural rights of hundreds of thousands of Service men and women, come under such attack - as these promises and provisions are being put to the test in this challenging financial, and geopolitical climate.

Although EMIGRANT claims there are no violation(s) of the SCRA in this case, anyone will have great difficulty finding a case anywhere where a single party has shown more animosity or disregard of the statute, including its refusal to observe the statutory 6% interests cap, and illegal seizure of property.

To its own credit however, the bankruptcy court, unlike the state court, attempted to follow the requirements of the SCRA statute - at least once. The court and other parties, including Appellee EMIGRANT, received repeated notice of Appellant's military service and deployment and copies of his official military orders filed in both April and May of 2009. On August 27, 2009 the bankruptcy court held a hearing and granted a request to enforce the SCRA. The bankruptcy court VACATED its previous order *[wrongly]* dismissing the case when Appellant

deployed, then it *reinstated* and STAYED the proceedings in accordance with federal law. Arguably, its July 1, 2009 dismissal, which was entered without notice or hearing to the Service-member debtor due to his deployment overseas, never actually took effect legally due to lacking constitutional due process. But in any event, the court rightly vacated its previous order *with the expressed intent to retroactively reimpose the bankruptcy stay* in accordance with the SCRA - an unambiguous federal statute meant to expedite the national defense.

Because the parties including EMIGRANT, already had notice of the SCRA statutory requirements and its mandatory language for an affidavit subject to perjury, and a certificate of Appellant's military status before seeking to sell or seize his home, his SCRA protected rights were violated by the self-help foreclosure sale orchestrated on August 31, 2009 and other unlawful actions, including the *second* default summary judgment entered and local publications related to efforts to seize the home while the owner was deployed fighting overseas; clearly to  avoid complying with the SCRA, despite sufficient notice of WORRELL's military service.

Under federal law the Plaintiff - not the Service-member, has a legal burden to show that no party affected by its action is entitled to SCRA protections by filing a *certificate of military status*, before attempting to deprive them of property. However, the record and evidence here shows this important legal requirement was

-30-

*never* satisfied by EMIGRANT. The evidence clearly shows that Appellant was on full-time Active Duty and "federally protected" from EMIGRANT's actions on August 31, 2009 when EMIGRANT claims to have sold his home. Because federal law mandates that EMIGRANT must provide to the court an affidavit and statement, under penalty of perjury, as evidence that Appellant was not on Active Duty or protected by the SCRA, *before proceeding with it foreclosure sale*, its actions and the sale of August 31, 2009 violated the SCRA and contravened the veteran's protected rights. Thus making the unapproved sale *void*, under section 533(c) of the Act. Tellingly also, on March 30, 2009 EMIGRANT had previously conducted another self-help sale of the home, and again refused to cancel its sale or to act reasonably after selling the home in blatant violation of federal bankruptcy law; *Id* 11 U.S.C. § 362.

It is at least interesting - if not strange - that on April 13, 2016, in dismissing the bankruptcy lawsuit prior to the discovery and a trial, the court seems to erroneously reason that in this case, although deployed, the Service member was *not yet protected* by the SCRA on August 31, 2009 when his home was sold by EMIGRANT, because it - nor no other court - had yet granted a stay due to the SCRA, even though there is no question the veteran was on active duty. This fallacy is like reasoning that someone "protected" under, say, the Americans with Disabilities Act (ADA1990), may *only* be discriminated against **after** they had obtained a court order **acknowledging** *their rights under the Act*. Not so in the

-31-

United States. It is the Congress, *not the courts* who determines <u>whom</u> a law

protects and <u>when</u> they are protected. The faulty reasoning contained in the

appealed order regarding the SCRA, is equivalent to rationalizing that a disabled

person protected by the ADA cannot suffer discrimination, *until a court grants an*

*order* acknowledging that person's protections under the federal statute.

### ii.   FEDERAL LAW, INCLUDING 11 U.S.C. § 362 OPERATES TO PROTECT PROPERTY OF THE BANKRUPTCY ESTATE, AND RENDERS ALL SELF-HELP POST-PETITION SALES, VOID AB INITIO

On appeal it is important for the court to carefully analyze exactly what has

been permitted to occur in this case, versus what federal law and the bankruptcy

code requires. The decision below on April 13, 2016 wherein the bankruptcy court

attempts to defend (unsuccessfully) the merits of permitting EMIGRANT to

*summarily* sell and seize property, even in spite of national laws in black and

white, intended to prevent such actions, and without showing it has any legitimate

standing, is unsupported in the law and facts of this case.

Instead, the record and facts here show that EMIGRANT filed its

foreclosure actions in bad faith, using forged instruments and baseless claims.

Then absent due process, [improperly] obtained default summary judgments for

well over half a million dollars, against a Service member, unjustly causing them

to file bankruptcy.

Normally a *[legitimate]* creditor may request a Section 362(d) relief from a burdensome automatic stay by filing the evidence its **perfected interest** in rem property is not adequately protected, then promptly proceed with its **legal** remedies. But for a [false] creditor relying forged instruments, trying to comply with the federal rules of bankruptcy is risky and difficult - if not fatal, to its schemes.

Because EMIGRANT "papers" were unable to pass the scrutiny and tests administered in bankruptcy proceedings, including the Rule 3001 proofs of claim, it was unwilling to disclose known discrepancies, electing instead to purposefully conceal those defects. Sufficient discovery and trial, if permitted could show EMIGRANT decided knowingly to file false claims, and likely corrupted a federal trustee into making known misrepresentations to obtain the [wrongful] dismissals, after the military debtor entered federally protected military service. The adversary proceedings filed in this case, if not dismissed, may also show whether these bad acts and misconduct occurred purely to avoid and defeat the bankruptcy code; which is a crime.

Ironically, the orchestrated dismissals now provide irrefutable evidence sufficient to defeat EMIGRANT's claims. The unique facts and circumstances of this case provide solid support for a conclusion that EMIGRANT's attempted

incomplete "foreclosure sale" on August 31, 2009 is void, and subsequently

violated the 362 automatic stay. The bankruptcy code provides:

"the stay of an act against property of the estate . . . continues until such

property is no longer property of the estate." 11 U.S.C. § 362(c)(1). Additionally,

Section 554(d) states: "[u]nless the court orders otherwise, property of the estate

that is not abandoned under this section and that is not administered in the case

remains property of the estate."

The Code further states that: "Unless the court orders otherwise, all property

of the estate is "abandoned" by law at the time a case is closed. See 11 U.S.C. §

554(c).

According to the docket this in fact occurred on September 30, 2011

[DE#86]. Therefore, the disputed real property, by federal law, remained part of

the Chapter 13 estate throughout 2010, and thus could not be subject to a **2009 sale**

**by EMIGRANT** or anyone else. The case ultimately again was **dismissed** *on*

*November 19, 2010* [DE # 67], even if wrongly premised on the trustee's

*[mis]*representations, while the military debtor was away on active duty and unable

to defend himself; once again ignoring the SCRA and its federal protections. After

the Chapter 13 dismissal order (DE # 67) became final, the bankruptcy "dismissal

statute" operates; *Id* Section 349. Therefore EMIGRANT's disputed self-help sale

attempted, but not completed, on Monday, August 31, 2009 should have been

-34-

declared void given these facts, once the case was reopened and on a motion or other appropriate pleading was brought before the bankruptcy Court.

<em>STATUTORY ANALYSIS OF § 362</em>

The automatic stay triggered as result of someone filing for bankruptcy is arguably one of the most valuable protections the Code provides, and is intended to act as a temporary federal injunction against creditor(s), providing the petitioner sufficient "room to breathe", so to speak, and start the financial reorganization needed to realize a "fresh start" without the undue burdens of excessive debts. Violation(s) of the automatic stay may subject the violator(s) to certain sanctions, including contempt of court, attorneys' fees, and other damages.

After receiving notice and knowledge of the debtor's military deployment in May 2009 EMIGRANT orchestrated (with the trustee) a wrongful dismissal of his case to avoid certain provisions of the bankruptcy Code; including Fed. R. Bankr. P. 3001 proofs, and mandatory requirements of the SCRA. On June 30, 2009 the trustee, based on known [mis]representations, [wrongly] moved the court for dismissal of the case. The next day, on July 1, 2009 the court entered an order granting the [improper] request, purportedly dismissing the case in violation of the SCRA rights of the military debtor, and baring a refiling for 6 months; enough time for EMIGRANT to *reset* and complete another unapproved foreclosure sale. Thus, the 362 stay legally never lifted, as result of the [conspired] dismissal orchestrated, absent *constitutional notice and mandatory hearing* necessary under the

-35-

circumstances for lifting a federal injunction protecting a military debtor deployed overseas, at the time.

On July 29, 2009 EMIGRANT improperly obtained another default "Summary Judgment" (violating the SCRA rights of the military debtor) and thereafter wasted no time advertising its self-help sale of the home, with no notice to the military debtor who was known to be deployed fighting overseas. About August 17, 2009 a motion was filed pro bono on the deployed Service member's behalf, seeking an emergency hearing to enforce his protected SCRA rights. The hearing was set for August 27, 2009 and the bankruptcy court was fully informed of the pending unapproved sale of the debtor's home, by EMIGRANT, set for August 31, 2009. Although neither the clerk nor pro bono attorney (Nelson Hunter Esq.) served a separate notice of the emergency hearing to enforce the military debtor's SCRA rights to the others, the record and evidence suggests that EMIGRANT who had already at least once violated the 362 stay on March 30, 2009 thereafter, closely monitored the electronic docket for this case, and therefore received immediate notice of the hearing (Also see exhibit-1). On August 27, 2009 the bankruptcy court acknowledged the mandatory nature of the federal statute, granted the motion enforcing the debtor's SCRA protected rights, and *fashioned* its own SCRA enforcement order stating in part:

\*\*\*

*This Court's Order Dismissing Case for Failure to Make
PreConfirmation Plan Payments and For Failure to Appear at the
341 Meeting of Creditors [DE 28] is VACATED and this case is
REINSTATED.*
*Pursuant to 50 U.S.C. app. §§522(b) and (d), the above styled
bankruptcy case, and all proceedings therein are STAYED until April
30, 2010.*

\*\*\*

**Objections to this Order may be filed with the Court within ten (10) days of the
date of entry of this Order, at which time the Court shall set a hearing on said
objections."[5]** (Emphasis added).

Furthermore, the transcript of the actual bankruptcy proceedings from

August 17, 2009 when the military debtor was deployed, further shows the court's

*unmistakable intent* to re-impose the Section 362 bankruptcy stay, *retroactively -*

\*\*\*

*Transcript of 2009 Hearing Granting Motion To. . .Vacate Dismissal [ECF # 30];
Page 3*

8 THE COURT:  Good morning.  I have received
9 the motion for stay.  I believe that the request now
10 satisfies the statutory requirements. So my question
11 to you is, I need to fashion an order here.  Mr.
12 Worrell is on assignment abroad?
13 MR. HUNTER:  That is correct.

. . .

---

[5] Pro bono attorney Nelson Hunter informed the court that he had not mailed notices of the
hearing, and apparently neither did the clerk or the Bankruptcy Noticing Center (BNC). However the
parties were already on notice of WORRELL's military status, and especially since EMIGRANT had
already previously violated the automatic stay, were reasonably expected to monitor the bankruptcy
docket. In fact, the information and evidence shows Emigrant indeed monitored the electronic docket and
had prompt notice and access to everything filed and docketed in the case by the bankruptcy clerk.

The SCRA also provides that the Service-member's defenses are not waived nor adversely
affected by the actions of anyone representing his or her interest during their military absence. See 50
U.S.C §521

*Page 4*

23 MR. HUNTER:  Okay.  The sale is scheduled
24 for August the 31st of next week.
25 THE COURT: All right. That is a problem.

. . .

*Page 5*

1 All right.  This is what I'm going to do.  I'm going
2 to grant it.  I'm going to say in the order that it's
3 subject to objections being filed within ten days of
4 entry of the order.  And you'll need to serve the
5 order on all creditors in this case.
6 MR. HUNTER:  Will do, Your Honor.
7 THE COURT:  Okay.  I think that he's 8 satisfied the statute.
9 MR. HUNTER:  Thank you.
10 THE COURT:  And I have a funny feeling,
11 having read all of the case law in this area, that I
12 don't think I have much discretion in granting the
13 stay. Some judges feel that there's more discretion,
14 but I do not think so.
15 So what I'm going to do is enter the order.
16 The order will be entered in the next couple of days.
17 You'll be required to serve it on all creditors in the
18 case.  They'll have a ten day objection period.  If
19 there are any objections, I'll have another hearing
20 about whether or not the standards have been met, if
21 anybody objects.  Okay.
22 MR. HUNTER:  Okay.
23 THE COURT:  Very good.  I'm going to fashion
24 my own order on this.
25 (The proceedings were concluded.)

* * *

So those who espouse the *theory* that the bankruptcy court failed to

retroactively establish the Section 362 stay must also redefine the normal meaning

and usage of "*Vacated*", and rewrite the laws and facts of this case to support that

argument.

According to Black's Law Dictionary, VACATED means to cancel, to annul, set aside, rescind, and to render void. The exact instructions of the bankruptcy court are contained in the order "fashioned" [ECF # 33]. The terms of the order is not in dispute, and the parties rights to raise legal objection(s) to the order were waived after *10 days expired*, in accordance therewith. The record indeed shows EMIGRANT **filed no objections** to the order enforcing the SCRA, since no valid reasons existed, and hence on September 11, 2009 in accordance with the terms therein at paragraph 5, it *voluntarily* waived its rights to do so. Rather, during the following year - until October 2010 when the military debtor redeployed again, EMIGRANT elected to file multiple bogus proofs of claim - directly contradicting its recent contention that somehow it misconstrued the 2009 order vacating the dismissal. Not so; EMIGRANT purposefully proceeded at its own peril by relying on an order - that was thereafter VACATED.

Therefore, in 2009 on September 1, the bankruptcy court [rightly] entered an order requiring that all the parties observe the military debtor's protected SCRA rights, supported by a Department of the Navy official letter dated July 18, 2009 notifying the Court of WORRELL's service to the United States.

On December 16, 2015, the court's own *careful analysis correctly* concluded, based on *established Eleventh Circuit authority*, that EMIGRANT's self-help attempts to improperly sell the home out from the bankruptcy estate on August 1, 2009 was unsuccessful and **"void under 11th Circuit case"** - because

-39-

the bankruptcy court had <u>intentionally</u> retroactively reimpose the stay to purposely render any adverse state court actions, without its expressed approval, void.

***

*Transcript of 2015 Hearing Granting Motion To Reopen. . . [ECF # 88];*
*Page 26*

 14 THE COURT:  I vacated the dismissal of the
 15 case, which means the stay was retroactively in
 16 effect, including the day before I entered the order,
 17 which means the sale was void under 11th Circuit case. . ."

***

Therefore, based on these facts and circumstances, the question for determination by this Court is, whether EMIGRANT, without a valid lien and despite having previous notice of WORRELL's military status, is entitled to sell his homestead property out from his chapter 13 estate, with no §362(d) approval of the bankruptcy court, and without legal notice to veteran, even while he was fighting overseas. Nevertheless, the April 13, 2016 appealed order on page 3, paragraph 3, incredibly attempts to supplant Eleventh Circuit authority with an uncommon specific and very limited ruling *In Re Hill* , 305 B.R. 100, 107-108 (Bankr. M.D. Fla. 2003); an entirely inapplicable case unrelated to the operation of SCRA and important facts of this case. Furthermore, the court in *Hill* had *sufficiently warned* a <u>non</u>military debtor that her chapter 13 case would be dismissed or converted, due to her *repeated* **late payments**. Therefore, absolutely no similarities exist between the facts in *Hill* - the only authority used to support the flawed decision - versus a deployed military debtor federally protected by the

-40-

SCRA, whose property somehow became the target of a deceptively scheme by an *alleged* creditor or bill collector, while he was deployed, protected, and not late on his commitments. The appealed decision is thus critically in err because *Hill* is entirely irrelevant, and provides no basis whatsoever for the rulings in this case.

### iii.   THE "DISMISSAL STATUTE" *OPERATES* UPON DISMISSAL OF A CHAPTER 13 CASE, TO REVEST PROPERTY OF THE ESTATE

It is a purely legal question before the court, as to whether Section 349 "operates" to *revest* interests (or reinstate ownership) of the debtor in real property of the estate, rendering any unapproved post-petition sale(s) **null and void**. Based on the undisputed facts here the [real] estate property in question, by operation of the federal statute, revested with the debtor upon dismissal of the Chapter 13 case, since the dismissal order on November 19, 2010, does not provide otherwise.

All equitable interests of the bankruptcy estate must be returned to the debtor, *except* where the court *for cause* has directed otherwise. Although this part of the Code is seemingly limited to property of the estate as of the petition date, courts have concluded that all estate property in the hands of the chapter 13 trustee as of the date of dismissal, belong to the debtor - not the creditors. If any party with a bona fide interest wishes to oppose revesting the estate property in the debtor under § 349(b)(3), they may bring a motion, supported by cause, on notice, and only the bankruptcy court may competently decide the issue; not the state court.

"[E]xcept" means "except". There is no valid basis for courts to arbitrarily add exceptions to those expressly and exclusively identified by Congress in the text of a statute.

### *11 U.S.C. § 349: US CODE (DISMISSAL STATUTE)*
### EFFECT OF DISMISSAL

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title –

(1) reinstates –

(A) any proceeding or custodianship superseded under section 543 of this title; (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and (C) any lien voided under section 506(d) of this title;

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3) *revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.*

### *STATUTORY ANALYSIS OF § 349*

Section 349 of the Bankruptcy Code ***dictates*** that upon dismissal, property of the estate revests in the entity in which such property was held immediately prior to the commencement of the case. 11 U.S.C. § 349(b)(3). The law further provides that unless a Court finds *cause* for bad faith on the part of the debtor, the

postpetition estate property also ***must*** be turned over from the trustee, and returned

to the debtor - by *operation* of the bankruptcy code. Therefore, the "Effect of

Dismissal" under title 11, Section 349 is to *return* all property of the Chapter 13

estate held by the court appointed trustee, back to the debtor, unless the court for

cause directs otherwise. The plain statutory text and clear intent of Congress in this

section of the Code, is unmistakable and supported by the legislative history

showing that this section of the Code is intended to "unwind" the case, as far as

practicable; and to re-establish the *status quo ante*.

### PROPERTY OF THE ESTATE

Property of the estate includes all legal and equitable interests a debtor has in

property as of the commencement of the case. See 11 U.S.C. § 541(a)(1). At no

time has it been challenged in this case, that the [real] property in question became

property of the estate, at the petition date of Thursday, March 26, 2009.

### REVESTING OF PROPERTY OF THE ESTATE

The self-effecting operation of the "dismissal statute" at 11 USC 349, is

dispositive, in this instance. The purpose of 349(b) obviously is to restore all

property rights to the position in which they were found at the commencement of

the case." The Bankruptcy Code, therefore expressly provides for the ***revesting*** of

property upon dismissal, if such property is not otherwise dealt with or

administered during the case. So that the dismissal of a bankruptcy case naturally

*revests* property of the Chapter 13 estate in the entity in which the property was held prior to the filing of the case. See 11 U.S.C. § 349(b)(3).

In this case, no one challenges Appellant's interests in the homestead property prior to the commencement of his Chapter 13 estate. Upon filing for bankruptcy, those interests became property of the estate under section 541(a)(1). That bankruptcy case was eventually dismissed, albeit in violation of his SCRA protections, on November 19, 2010, after his military redeployment. Pursuant to section 349(b)(3), the dismissal of the case caused the [real] property of the estate, including all interests in his homestead property, to revest in the debtor. As property of the estate, those interests revested when his case was dismissed. Therefore, as of November 19, 2010, his interest in the home was restored to the same interest he held prior to the commencement of his case on March 26, 2009 immediately prior to delivering the signed petition to the clerk. Hence, by operation of the "dismissal statute" in the bankruptcy code, effectively unwinding both unapproved 2009 foreclosure sales committed in this case, on March 30 and on August 31, the home undoubtedly revested to Appellant WORRELL on November 19, 2010, statutorily requiring EMIGRANT to if possible, reset the sale.

The state court also is bound by the plain language and text provided by Congress directing the revesting of property to the debtor in the event of dismissal, unless a bankruptcy court *for cause*, has directed otherwise in the Chapter 13 dismissal order on November 19, 2010 directing that real property should not be

returned to the debtor. Therefore, in this case, the Chapter 13 estate revested with the debtor, without question.  There is no acceptable interpretation of this Section of the law, given the facts of this case that is consistent with the appealed decisions of the bankruptcy court. And the ruling in this case is inconsistent with the bankruptcy code due to the effect of Section 349 of the so-call bankruptcy dismissal statute.

## XIII.
## CONCLUSION

For all these reasons, the appealed decisions of the bankruptcy court should be reversed, with instructions consistent with the law and fact of this case.

Respectfully submitted.

Dated: Wednesday, July 20, 2016.

Joseph L. Worrell

-45-