IN THE UNTED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED BY _____ D.C.
OCT 03 2016
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

IN RE:
JOSEPH L. WORRELL.
DEBTOR,

CHAPTER 13
CASE # 09-15332-EPK

---

JOSEPH L. WORRELL.
    PLAINTIFF,
VS.
EMIGRANT MORTGAGE COMPANY, INC.,
RETAINED REALTY, INC.,
    DEFENDANT.

ADVERSARY PROCEEDING
CASE NO.: 16-01046-EPK

APPELLATE CASE #
16-cv-80837-KAM

---

**PLAINTIFF'S EMERGENCY MOTION TO REIMPOSE SECTION 362 STAY AND FOR PRELIMINARY INJUNCTION, OR OTHER RELIEF**

PLAINTIFF - Servicemember, Joseph L. Worrell, pursuant to Rule 7001, Fed. R. Bankr. P. 7062, Fed. R. Civ. P. 62, and applicable law, hereby motions this court on an emergency basis, for entry of an order reimposing the §§ 362(a) Stay in this case, or issue a restraining order or other temporary injunctive relief to preserve the justiciability and right of appeal. In support thereof Plaintiff states as follows:

**BACKGROUND AND FACTS OF THE CASE**

1. This case involves the disputed sale and seizure of the home of a military family, after the servicemember had filed for Chapter 13 bankruptcy, and then was called up to perform multiple periods of military service.

2. The matter is pending appeal, seeking clarification and interpretation of protections and laws enacted by congress, expressly to protect persons performing military

Page **1** of **8**

service, and the precise operation of specific sections of the bankruptcy code, including 11 U.S.C. § 349(b)(3); the "dismissal statute". See also *In Re Nash* (9th Cir. 1985).

3. Noticeably in this case, during the chapter 13 proceedings while the servicemember was deployed overseas, alleged ceditor Emigrant Mortgage Company Inc. (Emigrant) was unable to satisfy Rule 3001 requirements for a "secured creditor", was unable to produce sufficient evidence of a legitimate note and mortgage showing a "perfected interest" against the bankruptcy estate, and was unable therefore to request relief from stay.

4. Instead, a trustee initiated wrongful dismissal (without notice or hearing) was used to *dissolve* the automatic stay, swiftly follow by an orchestrated state foreclosure "sale" when the servicemember was deployed overseas.

5. The case is under appellate review, and a final unappealable decision has not yet been entered.

6. Nevertheless, [false] creditor Emigrant, without showing an adequately "market value" appraisal, claims it has "sold" the veteran's home to a "bona fide third party buyer", while the dispute is pending appeal.

7. Entry of an order reimposing the § 362 Stay, or other suitable remedy by this court, could be crucial in preserving the justiciability of the appeal and right to appeal.

8. Amongst Emigrant's frivolous lines of argument on appeal is the dispositive claim that it *"fully completed"* a sale of the home on Monday, August 31, 2009. Notwithstanding that from October 2009 through August 2010 it filed multiple so called late *"proofs of claim"* under Rule 3001 penalty of fraud, aggressively prosecuted its false claims against the estate, and admittedly participated in the bankruptcy proceeding for over a year *after* August 31, 2009, as is evident from the court's docket.

9. Further, Emigrant readily concedes the home's title remained with the servicemember and it held no title ownership until at least after February 2, 2013 - at which time it in fact recorded [bogus] title as a fictitious [nonexistent] Florida Non Profit business entity.

10. Based on the facts and circumstances of this dispute, the appeal is a substantial and strong case, with good likelihood of success on its merits, when the statutory mandates and language are strictly applied.

11. Emigrant has nonetheless proceeded [as usual], without regard to the defects and fraud in its claims, and obtained an additional [statutorily time barred] default "deficiency judgement", in excess of $749,518.64.

12. This judgment too, was entered against the servicemember during supposedly protected periods of military service, and in violation of federal law.

13. These actions are solely intended to harass and interfere with the servicemember's rights and ability to properly pursue any legal remedy, or prosecute the federal appeal.

## STATUTORY ANALYSIS

14. There exist several unavoidable blatant fraudulent inconsistencies in Emigrant's foundational [summary judgment] claims - that its uniform residential mortgage [secured interest] lien was created on June 23, 2005, as security for [an unsigned] promissory note it created [a week later] on June 29, 2005.

15. Furthermore, there are explicit statutory prohibitions against the objectionable orders, in federal law and Florida law, which state law provides in pertinent part:

> **95.11 Limitations other than for the recovery of real property.**
> Actions other than for recovery of real property shall be commenced as follows:
> * * *
> (5) WITHIN ONE YEAR.—
> * * *
> (h) An action to enforce a claim of a deficiency related to a note secured by a mortgage against a residential property that is a one☐family to four family dwelling unit. The limitations period shall commence on the day after the certificate is issued by the clerk of court or the day after the mortgagee accepts a deed in lieu of foreclosure.

16. Section 95.11(5)(h), Fla. Stat. (2014) therefore, since July 1, 2014 expressly imposes a one-year statute of limitations for a foreclosure deficiency judgment, starting from the date a certificate of sale is issued.

17. In this case, alleged creditor Emigrant was issued a certificate of sale on Monday, August 31, 2009 while the servicemember was deployed fighting overseas, and

during a time when his bankruptcy case was pending and stayed, pursuant to 50 USC §§ 501 et. seq. (SCRA, 2003).

18. Subsequently, over six years later around September 2015, Emigrant filed an untimely and statutorily barred deficiency judgment request, which it also filed during a period of federally protected military service.

19. Even though Florida statute clearly prohibits entry of a deficiency judgment against a homeowner under such circumstances, it once again was wrongly granted a default judgment without showing what the **fair market value** of the property is.

20. Furthermore, federal law within the SCRA, requires the court must without discretion, reopen adverse judgments entered against a servicemember if the request is made within 60 to 90 days after performing military service to the United State, but again the law has been continually ignored.

21. On review, if the congressional mandates in the law, including 11 U.S.C. § 349 and the SCRA is evenly applied, these adverse (default) rulings and sanctions against the military member's service to the United States may be reversed.

22. The actions of alleged creditor Emigrant, not only constitutes abuse of process against a verified now indigent military veteran, is unconscionable, but is also represents criminal violation of the law. See *50 U.S.C. § 527, § 533, & § 597*; penalty provisions were added by P.L. 110-389, effective October 10, 2008.

## RELIEF REQUESTED

23. This Court, pursuant to 11 U.S.C. 105(a), possess broad powers and discretion to enter judgments necessary to enforce provisions of federal law and the bankruptcy code.

24. The law provides that if protection is warranted after a case is reopened, then an injunction would need to be imposed. Fed. R. Bankr. P. 7065; See In re Gledhill, 76 F.3d 1070, 1079 (10th Cir. 1996) ("Courts have uniformly held that a request to reimpose the automatic stay under 11 U.S.C. 105(a) constitutes "a proceeding to obtain an injunction or other equitable relief" under Rule 7001(7), which requires the filing of an adversary proceeding."). Therefore,

25. Plaintiff servicemember respectfully move this Court, on an emergency basis, for an order temporary reimposing the federal stay provisions under 11 USC 362(a) to appropriately restrain alleged creditor Emigrant, and to adequately facilitate prosecution of federal appellate review of this matter.

26. An order providing injunctive relief is the minimum appropriate remedy available, based on the facts, circumstances, and law in this case, which easily satisfies the requirements for such relief.

27. The continued abusive scorched earth tactics of [false] creditor Emigrant, have severely interfered with military duty obligation and even significantly adversely impacted military readiness, operations, and deployment tempo of members of the armed forces actively defending the United States.

28. The undersigned possess a good faith belief that the judgment granted alleged creditor Emigrant, *intentionally* violate federal law, state law, basic civil rights, and important constitutional provisions, and is thus unlawful. Therefore,

29. Undersigned is unable to comply with the directions of the judgment without violating official oaths essential to members of the United States military.

30. The supremacy clause of the constitution of the United States requires that state laws or actions in violation of federal law are invalid; U.S. Const. art. VI, cl.2; See also In Re: Shaw v. Delta Air Lines, 436 U.S. 85, 96 n. 14 (1983).

31. There is imminent risk of incarceration, and other harm to the servicemember, due to the curious set of facts in this case, and basic rights or ability to prosecute the federal appeal could be adversely affected, and unduly tactically eliminated.

32. There is no known practicable means of satisfying the objectionable order, without violating important official oaths.

## CONCLUSION

WHEREFORE, and for the foregoing reasons, Plaintiff servicemember respectfully request this Court reimpose the Section 362(a) Stay in accordance with statutory provisions to preserve justiciability of the federal appeal, and protect persons engaged in service defending the United States, and grant other and further relief as this Court deems just and equitable.

Appendix attached.

APPELLATE CASE # 16-cv-80837-KAM
Adversary Proceeding: 16-01046-EPK
CH 13 Case No. 09-15332-EPK

Respectfully submitted,

Joseph Worrell, Pro Se.
P.O. Box 30071
West Palm Beach, FL 33420

## CERTIFICATION

Witnessed / Notarized:

STATE OF FLORIDA,
COUNTY OF MARTIN.
Subscribed and Sworn to before me, In my presence, this __3rd__ day of __Oct__, 2016

_Denise Nails Williams_
(Notary Signature)

My commission expires __05/26/2020__
This person is personally known to me _____; or
Type of identification produced: __FL DL  04/18__

SERVICE LIST

1.
EMIGRANT MORTGAGE COMPANY, INC.,
Becker & Poliakoff, P.A.
c/o Aleida Martinez Molina, Esq.
121 Alhambra Plaza, 10th Floor,
Coral Gables, FL 33134

2.
RETAINED REALTY, INC.,
c/o Richard C. Wald, CEO
5 East 42nd St.
New York, New York 10017

Denise Nails Williams
Notary Public
State of Florida
My Commission Expires 05/26/2020
Commission No. FF 996593

# APPENDIX

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

EMIGRANT MORTGAGE COMPANY, INC., a
Foreign for-profit corporation,

CASE NO.
07-502007CA019114XXXXMBAW

Plaintiff,

GENERAL JURISDICTION DIVISION

v.

JOSEPH L. WORRELL, ET AL.,

Defendants.
_____/

## ORDER OF CONTEMPT

**THIS CAUSE** having come before this Court on September 6, 2016 upon the Court's Order for the Defendant to appear in Court to Show Cause why he should not be held in Contempt for his failure to respond to Form 1.977, and the Court having determined that Defendant failed to respond to such discovery requests despite having been duly served with same, and this Court's Order compelling response to same, it is thereupon

**ORDERED** that:

1. Defendant is found in civil contempt for the above stated non-compliance; and
2. The Court reserves jurisdiction on costs and fees.
3. This order shall be served by email and regular mail.

**PURGE PROVISION:** To avoid confinement to jail, Defendant, JOSEPH L. WORRELL must respond to Form 1.977 within thirty (30) days from the date of service of this Order. If Defendant fails to purge himself as provided herein, upon the filing of an Affidavit by Plaintiff's attorney that Defendant has not purged himself, an order of arrest shall be issued directing the Sheriff or any other law enforcement officer of the State of Florida to take Defendant, JOSEPH L. WORRELL, into custody.

**DONE AND ORDERED** in Chambers at Palm Beach County, Florida on this ___ day of _____, 2016.

SIGNED & DATED
SEP 06 2016

SUSAN R. LUBITZ
SENIOR JUDGE

_____
CIRCUIT COURT JUDGE

**Copies furnished to:**

Steven M. Davis, Esquire
Joseph L. Worrell

ACTIVE: E09475/116345:8926330_1

IN THE CIRCUIT/COUNTY COURT OF THE **Fifteenth** JUDICIAL CIRCUIT
IN AND FOR **Palm Beach** COUNTY, FLORIDA

Emigrant Mortgage Company Inc,
Plaintiff/Petitioner or in the interest Of

CASE NO. 50 2007CA019114XM

vs.
Joseph Worrell, ET. AL.
Defendant/Respondent

## APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS

Notice to Applicant: If you qualify for civil indigence you must enroll in the clerk's office payment plan and pay a one-time administrative fee of $25.00. This fee shall not be charged for Dependency or Chapter 39 Termination of Parental Rights actions.

1. I have **01** dependents. *(Include only those persons you list on your U.S. Income tax return.)*
   Are you Married? /Yes  No   Does your Spouse Work?...Yes ✓ No   Annual Spouse Income?  $ **N/A**

2. I have a net income of $ **100.00** paid   weekly   every two weeks   semi-monthly   monthly   yearly ✓ other
   *(Net income is your total income including salary, wages, bonuses, commissions, allowances, overtime, tips and similar payments, minus deductions required by law and other court-ordered payments such as child support.)*

3. I have other income paid   weekly   every two weeks   semi-monthly   monthly ✓ yearly   other
   *(Circle "Yes" and fill in the amount if you have this kind of income, otherwise circle "No")*

   Second Job ................................................ Yes $ _____ No
   Social Security benefits
       For you ............................................. Yes $ _____ No
       For child(ren) .................................. Yes $ _____ No
   Unemployment compensation .............. Yes $ _____ No
   Union payments .................................... Yes $ _____ No
   Retirement/pensions ............................. Yes $ _____ No
   Trusts .................................................... Yes $ _____ No

   Veterans' benefits ................................. Yes $ **1000** No
   Workers compensation ......................... Yes $ _____ No
   Income from absent family members ... Yes $ _____ No
   Stocks/bonds ........................................ Yes $ _____ No
   Rental Income ...................................... Yes $ _____ No
   Dividends or interest ............................ Yes $ _____ No
   Other kinds of income not on the list .... Yes $ _____ No
   Gifts ..................................................... Yes $ _____ No

   I understand that I will be required to make payments for fees and costs to the clerk in accordance with §57.082(5), Florida Statutes, as provided by law, although I may agree to pay more if I choose to do so.

4. I have other assets: *(Circle "yes" and fill in the value of the property, otherwise circle "No")*
   Cash ..................................................... Yes $ **20.00** No
   Bank account(s) ................................... Yes $ **40.00** No
   Certificates of deposit or
   money market accounts ....................... Yes $ **N/A** No
   Boats .................................................... Yes $ **N/A** No

   Savings account ................................... Yes $ **20.00** No
   Stocks/bonds ....................................... Yes $ **N/A** No
   Homestead Real Property* ................. Yes $ **N/A** No
   Motor Vehicle* .................................... Yes $ **N/A** No
   Non-homestead real property/real estate* .... Yes $ **N/A** No

   *show loans on these assets in paragraph 5

   Check one:  DO ✓ DO NOT expect to receive more assets in the near future. The asset is **N/A**

5. I have total liabilities and debts of $ **130,000.** as follows: Motor Vehicle $ **N/A**, Home $ **N/A**, Other Real Property $ **N/A**, Child Support paid direct $ **600.00/mth**, Credit Cards $ **100.00/mth**, Medical Bills $ **150/mth**, Cost of medicines (monthly) $ **75/mth**,
   Other $ **Edu. Loan**.

6. I have a private lawyer in this case .............. Yes No **No**.

A person who knowingly provides false information to the clerk or the court in seeking a determination of indigent status under s. 57.082, F.S. commits a misdemeanor of the first degree, punishable as provided in s.775.082, F.S. or s. 775.083, F.S. I attest that the information I have provided on this application is true and accurate to the best of my knowledge.

Signed this **28** day of **March**, 20 **16**.

04/24/1964
Date of Birth

W640450641410
Driver's License or ID Number

PO Box 3007 West Palm Beach, FL 33420
Address, P O Address, Street, City, State, Zip Code

Signature of Applicant for Indigent Status
Print Full Legal Name **Joseph Worrell**
Phone Number: **N/A**

2016 MAR 18   CLERK CIRCUIT COURT APPEAL

**CLERK'S DETERMINATION**

Based on the information in this Application, I have determined the applicant to be (X) Indigent ( ) Not Indigent, according to 57.082, F.S.

Dated this 21 day of MARCH 20 16

Clerk of the Circuit Court by _____

This form was completed with the assistance of: _____
Clerk/Deputy Clerk/Other authorized person.

**APPLICANTS FOUND NOT TO BE INDIGENT MAY SEEK REVIEW BY A JUDGE BY ASKING FOR A HEARING TIME. THERE IS NO FEE FOR THIS REVIEW.**

Sign here if you want the judge to review the clerk's decision _____



STATE OF FLORIDA • PALM BEACH COUNTY
I hereby certify that the foregoing is a true copy of the record in my office.
THIS 21 DAY OF MARCH 20 16
SHARON R. BOCK
CLERK & COMPTROLLER
By _____ DEPUTY CLERK



```
                                            1572
                                            NROWS/3950806/0
                                            SDN: N8510516RT10985
                                            07 JAN 2016

SUBJ: ORDERED TO ▇▇▇▇▇▇▇; CASE OF CB2 JOSEPH L WORRELL, USN,
      975/CE2

ENDORSEMENT STAMP(PRINT)

GAINING COMMAND  NMCB14          DATE/TIME REPORTED: 14Feb16/0200
Printed Name: ___ C. MONROE      Signature: _____
MESSING: (AVAILABLE) / NOT AVAILABLE  BERTHING: AVAILABLE / NOT AVAILABLE
NON-AVAILABILITY NUMBER _____   DATE/TIME DEPARTED: 17Feb16/1600
Printed Name: YN1 V. Paine       Signature: _____


For Paying Office Use Only

I certify that on this _____, I processed this set of orders
for payment.            (Date)



_____          _____
Print Name                       Signature
```

Expert Affidavit by Neil F Garfield, M.B.A., J.D.

Expert Affidavit by Neil F Garfield, M.B.A., J.D.
Licensed by Florida Bar #229318
Subject: Joseph Worrell
Date 6/30/16

Comes now the Affiant, Neil F Garfield, as an officer of the Court and states as follows:

1. Affiant is currently licensed as an attorney by the Florida Bar and the Federal Bar.
2. Affiant's resume is attached hereto.
3. Affiant was retained to perform a review and report regarding certain transactions and instruments of transfer to determine whether the parties involved in litigation had any recognizable interest under generally accepted accounting principles (GAAP) as promulgated by the Financial Accounting Standards Board or whether such parties had a legal interest even if the grounds for accepting their assertions were unsupported by GAAP.
4. The answer to both questions is in the negative. None of the parties who have asserted rights to collect or enforce the note or mortgage have any right to do so and none of them have any authority or agency relationship in which they are empowered to collect or enforce on behalf of a bona fide creditor. In fact, based upon my specific experience with securitized instruments, I am certain that the parties seeking to collect, enforce and foreclose are involved in a scheme that violates Federal law and probably violates state statutes.
5. I have been retained as an expert in the securitization of debt and as an expert in lending practices, particularly in Florida. My resume is attached.
6. Specifically, I have been asked whether there is sufficient data to render an opinion on the status of the loan, and the ownership of the debt, the note and the mortgage. My reply is that there is sufficient data to render such an opinion.
7. I have reviewed the alleged loan origination documents, and assertions made by various parties claiming an interest in the loan. My opinion is that none of those parties have provided evidence of ownership of the debt, note or mortgage and further, it is highly improbable that such evidence exists.

1

Expert Affidavit by Neil F Garfield, M.B.A., J.D.

8. In addition it is my opinion that the documents relied upon by the initiators of foreclosure against Mr. Worrell raise more questions than they answer; accordingly it is my opinion that no auditor or CPA or forensic analyst would utilize normal legal presumptions regarding documents that appear to be facially valid in this instance. Such documents, as related below, state or imply that an actual transaction took place between the stated parties. It does not appear that any such transactions ever occurred. And based upon my knowledge of standards and practices in the investment banking industry I am quite certain that no such transactions ever occurred for if they had occurred, the parties seeking collection, enforcement and foreclosure would have asserted positions consistent with the actual existence of those transactions, to wit: the claiming party would have asserted itself as a holder in due course or an agent for an identified creditor owning the debt and they would show, as was always the practice before the era of securitization, that payment as made for the debt, thus satisfying the requirements of Article 3 of the Uniform Commercial Code as to enforcement of the note and Article 9 of the Uniform Commercial code as to employing the mortgage for use in foreclosure of real property.

9. It is my opinion that there was no loan contract between Worrell and Emigrant and that there could not have been any valid transfer from Emigrant to any "Successor."

10. I have reviewed the documents presented to me and I have done independent research on the alleged loan contract and I have concluded that the stated parties on the note and mortgage never consummated a loan contract although it is apparent that money appeared from some third party source. My opinion is that this loan is subject to claims of sale, transfer and probably securitization of the debt when none of those events ever occurred. In my opinion, the only party capable of selling any rights to the advance of the money that was characterized as a loan would have been the third party source of funds or its authorized representative.

11. Custom and practice in the industry during the era of "securitization" (i.e., the last 20 years), required the money trail and the paper trail to separate. The meaning of

2

Expert Affidavit by Neil F Garfield, M.B.A., J.D.

the preceding statement is that a paper trail was created but was left untethered to any transaction that occurred in real life.

12. There is no factual evidence presented to me that would show any actual transaction or even an assertion of such a transaction other than the documents themselves, which are self-serving and at best could only be the starting point for an investigation or audit into the identity of the creditor. Utilizing facts and events in the public domain these specific parties have been previously shown to have been non-compliant with specific requirements in various settlements with regulators and law enforcement; specifically they have failed or refused to review the transaction record on each loan in which they have asserted rights to service, enforce or in which they have stated or implied ownership.

13. The facts demonstrate inconsistency in the assertions by the various parties who are asserting an interest in the alleged loan either as alleged "servicers" or as the "holder" of the note and mortgage. Under uniform rules issued by the Financial Accounting Standards Board and generally accepted accounting practices, the documents presented are insufficient to conclude that any actual transaction occurred between the stated parties in the alleged origination of the loan, in the alleged transfer of ownership or presumed rights to enforce, nor any final transaction in which any identified party actually purchased the note. The documents exist but they lack meaning in the absence of an actual transaction.

14. An examination of the documents reveals that even the facial validity of the documents is at the very least, questionable. For example, Emigrant is stated as the originator and payee on the alleged loan but no document exists showing that it was the source of funds. And for loans such as that presented to Worrel the normal practice would have been for a remote third party, unrelated to the transaction, to employ the use of investor funds for the origination of the illusion of a loan contract. That appears to have been presumed by the Court. However the note bears a date of 6/29/05 when the alleged closing took place on 6/23/05. In my experience such errors do not ordinarily occur in loan closings. This indicates that third parties were involved and "pulling the strings" on each closing that Emigrant sold and was paid a fee for doing so.

Expert Affidavit by Neil F Garfield, M.B.A., J.D.

15. Although it is counter-intuitive it is my opinion that the original note was destroyed and then fabricated through technical and mechanical means and that the inconsistent dates are consistent with the standard practice of the industry at the time of the alleged loan closing, to wit: that Emigrant was the originator, broker or conduit for the transfer of money for the benefit of the homeowner but was never the source of funds, directly or indirectly. The destruction of the original notes was and remains common practice in the industry enabling intermediaries to sell the ethically fabricated notes as originals to multiple parties. See Study by Katherine Ann Porter while at the University of Iowa in which it was shown that no less than half of all notes were immediately destroyed after the homeowner signed them. All subsequent production of the "original note" was in fact the product of sophisticated mechanical fabrication and forgery.

16. Emigrant's role, in my opinion, was that of a "front" for the third party source of funds. Accordingly the simple application basic law of contracts is that the loan contract is an illusion — i.e., the elements of contract are not evident in this situation. Accordingly it is my opinion that no loan contract exists, although there is a liability owed by the homeowner. Having failed to disclose the truth about the loan origination, Emigrant and others violated the disclosure rules in the Federal Truth in Lending Act that require identification of the creditor.

17. Looking at the documents used in the processing of a foreclosure claim it is also apparent to me that active efforts of concealment are present — designed to prevent the homeowner to know the identity of the creditor and designed to trick the homeowner into believing that the parties in the foreclosure actually had rights to enforce a loan contract that in fact does not exist. In my opinion the apparent transfers of interests in the subject alleged loan would not be acceptable to any auditor following the rules promulgated as generally accepted accounting principles by the Financial Accounting Standards Board. Since the alleged origination and purported transfers of rights are not supported by facts in there pal world, such documents are void from an accounting and auditing perspective in the absence of proof of actual transactions.

Expert Affidavit by Neil F Garfield, M.B.A., J.D.

18. The homeowner reports in interviews with me that he believed at least some of the assertions of Emigrant and Ocwen. This is common. But a review of industry practices reveals clearly that Ocwen has been used virtually exclusively by those who are actors in a false plan of securitization and transfers of loan contracts that were never consummated. If Emigrant had actually funded the loan it would not have given the servicing rights to Ocwen as it had ample personnel to perform the servicing for ordinary mortgage loans granted by Emigrant. Accordingly Emigrant was not the lender, not the servicer and not the agent for any creditor involved in the transaction with Worrell.

Further Affiant Sayeth naught.

_____
Neil F Garfield
As an Officer of the Court
5944 Coral Ridge Drive #2786
Parkland, Florida 33076
FBN 229318

COUNTY OF BROWARD

           SS

STATE OF FLORIDA

BEFORE ME, A NOTARY PUBLIC LICENSED BY THE STATE OF FLORIDA, Neil F Garfield known to me or who produced Florida Driver's License G646 2647 0600 as proof of his identity, and who signed this Expert Affidavit by Neil F Garfield, M.B.A., J.D. in my presence this 9th day of July, 2016.

NOTARY SEAL

NOTARY PUBLIC

5